UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENAS PUBENTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ERIC H. HOLDER, JR., Attorney General, | ) |
| U.S. Department of Justice, ROBERT S. | ) 10 C 7722 |
| MUELLER, III, Individually and as | ) |
| Director, Federal Bureau of Investigation; | ) |
| and COLLEEN ENGLAND, Individually | ) |
| and as Foreign Language Program Manager, | ) |
| Chicago Division of the Federal Bureau of | ) |
| Investigation, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on Defendants' motions to dismiss Plaintiff Enas Pubentz's ("Pubentz") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motions are granted in part and denied in part.

## BACKGROUND

According to the allegations of the complaint, which we accept as true for purposes of this motion,[1] Pubentz is an Israeli national who joined the Chicago division of the Federal Bureau of Investigation ("FBI") as a language analyst in November 2003.

---

[1] *Warth v. Seldin,* 422 U.S. 490, 501 (1975).

On January 9, 2009, a speaker of Palestinian origin was invited by the University of Illinois at Chicago ("UIC") to make a presentation on the Gaza war. During the presentation, Pubentz expressed her opinions on the Israeli-Palestinian conflict, the refugee situation, and the political, social and religious concerns in the Middle East. Because of her dialogue with the UIC speaker, Pubentz was allegedly excluded from eligibility for the position of Acting Supervisor. Colleen England ("England"), Pubentz's direct supervisor and manager of the Foreign Language Program, allegedly advised her that her exchange with the Palestinian speaker negatively affected her access to analytical training, collateral assignments and future promotion in the department. Pubentz further alleges that departmental supervisors and co-employees characterized her as an "embarrassment" to the FBI, deemed her views on the Gaza war "unrepresentative of Arabs in the region," and referred to her as a "Zionist Arab." From that day on, Pubentz claims that her supervisors and other members of the department expressed distrust in her ability to be impartial. England excluded Pubentz from all training events, supervisory assignments and wrongfully accused her of insubordination. England, along with other supervisors, denied Pubentz access to future promotional assignments, falsely accused her of unprofessional work ethic, and negatively and inaccurately evaluated her performance. Pubentz was also subjected to harassment, a hostile work environment, and disparate terms and conditions of employment.

On April 28, 2009, Pubentz filed an Equal Employment Opportunity complaint ("EEO complaint") with her department's Office of Equal Opportunity. The Department's Office did not issue a final decision and more than 180 days have elapsed since the filing of the administrative complaint.

In July 2009, Pubentz transferred to the FBI's San Francisco office. According to Pubentz, even though she had left the Chicago office, England continued to penalize her because Pubentz had engaged in EEO activity in Chicago. Pubentz alleges that England falsely described her to her new supervisors in San Francisco as "high maintenance," insubordinate, and unreliable. As a result, Pubentz was placed on a performance-improvement-plan, was denied several work and promotional opportunities, and was continuously subjected to adverse and retaliatory terms and conditions of employment. On September 17, 2010, Pubentz filed another EEO complaint with the San Francisco EEO Department. The FBI investigated the matter and on February 25, 2011, mailed a report to Pubentz notifying her that she had 30 days to request a hearing before the Equal Employment Opportunity Commission ("EEOC"), otherwise the Department of Justice (the "DoJ") would issue a final decision without a hearing.

On December 5, 2010, Pubentz filed suit in the United States District Court for the Northern District of Illinois seeking various forms of injunctive and monetary relief.

In her complaint, Pubentz asserts three Title VII counts against the United States Attorney General:[2] one for discrimination on the basis of race and national origin (count I), one for retaliation based on the Chicago events (count II), and one for a continuing course of retaliation taking place in San Francisco (count III). Pubentz also asserts an additional count for retaliation in violation of her First Amendment (count IV) against the FBI Director, in his official capacity, and against England in both her individual and official capacities.[3] Defendants now move to dismiss counts III and IV of the complaint, and to dismiss England from the suit.[4]

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe the allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint.

---

[2] The parties do not dispute that the U.S. Attorney General is the *only* proper party defendant under Title VII claims. The FBI being a subunit of the Justice Department, the appropriate defendant in all Title VII claims is therefore the U.S. Attorney General. *Mulhall v. Ashcroft*, 287 F.3d 543, 550 (6th Cir. 2002); *see McGuiness v. United States Postal Serv.*, 744 F.2d 1318, 1322 (7th Cir. 1984).

[3] The U.S. Attorney General, the FBI Director, and England are collectively referred to as "the Defendants."

[4] Defendants do not dispute that the FBI Director is a proper defendant with respect to Pubentz's First Amendment retaliation claim.

*Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To be cognizable, the factual allegations within a complaint must raise a claim for relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To state a cognizable claim, a complaint must describe the claim in sufficient detail to give the defendant notice of what it is and the ground upon which it rests and plausibly suggest that the plaintiff has a right to relief. *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). With these principles in mind we turn to the motions at hand.

## DISCUSSION

### I. Count III - Continuing Retaliation

Defendants argue that this Court should dismiss Pubentz's continuing retaliation claim because Pubentz did not exhaust her administrative remedies. Defendants maintain that, pursuant to 42 U.S.C. § 2000e-16(c), Pubentz could bring an action either within 90 days from the date of receipt of the DoJ's final decision or 180 days after the filing date of her administrative complaint. Because Pubentz filed her second EEO complaint on September 17, 2010, that is, half-way through the statutory period, Defendants contend Pubentz's claim is premature. Pubentz responds that although she filed a second EEO complaint with the San Francisco FBI office, such a filing was unnecessary to perfect her continuing retaliation claim.

"A Title VII plaintiff may bring only those claims that were included in her original EEOC charge, or that are like or reasonably related to the allegations of the charge or growing out of the charge." *Gawley v. Ind. Univ.*, 276 F.3d 301, 314 (7th Cir. 2001). Such allegations include retaliation for filing the EEOC charge. *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989). "To meet this standard, the EEOC charge and the complaint must . . . describe the same conduct and implicate the same individuals." *Gawley*, 276 F.3d at 314. In the instant case, Pubentz alleges that, while in the Chicago office, England excluded her from all supervisory and training assignments, denied her promotion, and subjected her to adverse employment conditions. As a result, Pubentz filed her first EEO charge with the Chicago office. Pubentz further alleges that, following her transfer to San Francisco, and because Pubentz had filed the first EEO complaint, England persisted in her retaliation pattern by making disparaging comments to Pubentz's new employers. This Court finds that Pubentz's claims of continuing retaliation emanating from the Chicago office are reasonably related to, and grow directly from, her underlying discrimination complaint. In addition, count III implicates the Chicago supervisors and their allegedly unlawful employment practices, not the San Francisco supervisors and their actions, as Defendants suggest. Consequently, we conclude that there was no need for Pubentz to

file a second EEO complaint with the San Francisco office to perfect her continuing retaliation claim. The Defendants' motions to dismiss count III are denied.

Defendants next argue that, with respect to count III, venue properly lies in the Northern District of California. Title VII provides that venue is proper "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed . . . or in the judicial district in which aggrieved person would have worked but for the alleged unlawful employment practice [.]" 42 U.S.C. § 2000e-5(f)(3). Venue is proper in the Northern District of Illinois because, at all relevant times, Pubentz worked and the alleged discriminatory and retaliatory conduct occurred in the Northern District of Illinois. Further, this Court can reasonably infer from the allegations of the complaint that, but for the unlawful employment practice, Pubentz would have been working in Chicago. In sum, we find that Pubentz's action is properly before us.

## II.     Count IV - First Amendment Retaliation

Defendants argue that this Court should dismiss count IV of the complaint because a federal employee has no *monetary* remedy under the First Amendment for alleged violations that occurred in the course of federal employment. Defendants contend that Pubentz's exclusive remedy lies under the Civil Service Reform Act of 1978 (the "CSRA"), which gives exclusive jurisdiction over civil service personnel disputes to the Merit Systems Protection Board (the "MSPB"). Pubentz does not dispute

the fact that courts are not allowed to award money damages for alleged constitutional violations. Pubentz, however, retorts that the CSRA does not preclude a federal employee from pursuing *injunctive* relief against her employer. As both parties acknowledge, there is a circuit split as to whether, under the CSRA, a court is precluded from authorizing injunctive relief.[5] The Seventh Circuit has not addressed the issue. Defendants do not seek dismissal of Pubentz's First Amendment claim to the extent Pubentz only requests injunctive relief. Because the parties do not dispute whether CSRA precludes district courts from granting injunctive relief, we will not, at this stage of the proceedings, address this issue. Accordingly, we grant Defendants' motion to dismiss count IV insofar as Pubentz seeks monetary relief.

### III. Proper Defendants In Count IV

In count IV, Pubentz asserts a First Amendment retaliation claim against England both in her official and individual capacities. Defendants argue that Pubentz should be entirely dismissed from the suit.

Defendants first contend that England cannot be sued in her individual capacity. We agree. To the extent Pubentz seeks to hold England, a federal actor, liable for her

---

[5] *Compare Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991), *and Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1576 (11th Cir. 1990), *and Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 962 (10th Cir. 1989) (holding CSRA as the exclusive vehicle for all federal employee claims related to federal employment), with *Spagnola v. Mathis*, 859 F.2d 223, 229 (D.C. Cir. 1988) *and Mitchum v. Hurt*, 73 F.3d 30 (3d Cir. 1995).

role in the alleged deprivation of her constitutional rights, Pubentz is asserting a *Bivens* claim.[6] The Seventh Circuit has held that where Congress has provided a comprehensive remedial mechanism for constitutional violations "*Bivens* remedies have no place in individual personnel disputes arising out of federal employment." *Paige v. Cisneros*, 91 F.3d 40, 44 (7th Cir. 1996). "There is no question [] that the CSRA provides the exclusive remedy for an alleged constitutional violation (including an alleged First Amendment violation) arising out of federal employment." *Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006). Therefore, Pubentz may not maintain a monetary relief action against England in her individual capacity. In addition, Pubentz does not argue, let alone support, that she is entitled to injunctive relief from England in England's individual capacity. Accordingly, any claim against England in her individual capacity is dismissed.

Defendants finally argue that because count IV has already been asserted against the FBI Director and the U.S. Attorney General, suing England, in her official capacity, is redundant. A suit against an official in her official capacity is actually a suit against the government entity. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-

---

[6] In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Supreme Court held that victims of constitutional violation perpetrated by a federal actor may sue the individual offender for damages in federal courts despite the absence of explicit statutory authorization for such suits.

capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. Where a plaintiff names the government entity as a defendant in the suit, the claim against the individual in her official capacity is redundant. *See Kielbasa v. Ill. E.P.A.*, No. 02 C 4233, 2003 WL 880995, at * 3 (N.D. Ill. Mar. 2, 2003). Here, Pubentz has asserted count IV against the U.S. Attorney General, the FBI Director, and England. The FBI is thus on notice of Pubentz's action and has received the opportunity to respond through the instant motion to dismiss. It is therefore superfluous for Pubentz to sue the FBI and an individual in his official capacity. Accordingly, England is dismissed from the suit.

## CONCLUSION

Based on the foregoing analysis, the motions to dismiss are granted in part and denied in part.

/s/ Charles P. Kocoras
───────────────────────────
Charles P. Kocoras
United States District Judge

Dated:  May 19, 2011